RECORD NO. 11-5127

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

v.

## GREGORY ROLAND PRUESS,

*Defendant – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

_____

## REPLY BRIEF OF APPELLANT

_____

**Henderson Hill**
**Executive Director**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**

**\*Ann L. Hester**
**Assistant Federal Defender**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**
**129 West Trade Street, Suite 300**
**Charlotte, North Carolina 28202**
**(704) 374-0720**

*Counsel for Appellant*
  *\*Counsel of Record*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...............................................................................1

ARGUMENT .......................................................................................3

    I.    The Government Fails to Recognize that the Supreme Court Has Not Identified the Ban on Felons' Possession of Ammunition As Presumptively Reasonable .........................................3

    II.    The Government Fails to Confront this Court's Precedents Interpreting the Second Amendment ....................................................4

        A.    The Government Attempts to Revisit Whether Felons Were Excluded from Second-Amendment Rights When the Constitution Was Ratified, but Stare Decisis Prohibits Revisiting Evidence that Chester Already Ruled Inconclusive ................................................................5

        B.    Pruess Satisfied the First Prong of the Chester Analysis by Establishing He Falls Within the Protection of the Second Amendment ................................................................6

            1.    The Government Fails to Overcome the Historical Evidence Establishing That Non-Violent Felons Were Protected by The Second Amendment at the Time of Its Ratification.....................................................7

            2.    The Type of Ammunition That Pruess Bought Does Not Take Him Outside the Protection of the Second Amendment.......................................................11

            3.    Pruess's Intended Use of the Ammunition To Develop Night-Vision Goggle Mounts Does Not Take Him Outside the Protection of the Second Amendment.......................................................11

i

C.    The Government Fails To Discharge Its Burden of
Establishing a Reasonable Fit Between 18 U.S.C.
§ 922(g)(1) As Applied To Pruess and a Substantial
Government Objective ...........................................................14

CONCLUSION ....................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*District of Columbia v. Heller*,
554 U.S. 570 (2008).................................................................*passim*

*McDonald v. City of Chicago*,
130 S. Ct. 3020 (2010).................................................................1

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996).................................................................6

*United States v. Anderson*,
559 F.3d 348 (5th Cir. 2009) ........................................................15

*United States v. Barton*,
633 F.3d 168 (3d Cir. 2011) ................................................. 8-9, 14

*United States v. Bean*,
537 U.S. 71 (2002).................................................................9

*United States v. Carter*,
669 F.3d 411 (4th Cir. 2012) ................................................*passim*

*United States v. Chester*,
628 F.3d 673 (4th Cir. 2011) ................................................*passim*

*United States v. Edwards*,
666 F.3d 877 (4th Cir. 2011) ........................................................8

*United States v. Khami*,
362 F. App'x 501 (6th Cir. 2010).................................................15

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ........................................................6

*United States v. Masciandaro,*
   638 F.3d 458 (4th Cir. 2011) ...........................................................................10

*United States v. Moore,*
   666 F.3d 313 (4th Cir. 2012) .............................................................5, 8, 10

*United States v. Rivers,*
   595 F.3d 558 (4th Cir. 2010) ...........................................................................6

*United States v. Rozier,*
   598 F.3d 768 (11th Cir. 2010) .......................................................................14

*United States v. Staten,*
   666 F.3d 154 (4th Cir. 2011) .........................................................................10

*United States v. Stuckey,*
   317 F. App'x 48 (2d Cir. 2009) .....................................................................15

*United States v. Vongxay,*
   594 F.3d 1111 (9th Cir. 2010) .......................................................................14

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010) .......................................................................14

## CONSTITUTIONAL PROVISION

U.S. Const. amend. II....................................................................*passim*

## STATUTES

18 U.S.C. § 922(g) ............................................................................4, 16

18 U.S.C. § 922(g)(1)....................................................................*passim*

18 U.S.C. § 923(d) ................................................................................13

**OTHER AUTHORITIES**

An Act To Strengthen The Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961)....................................................................................9

Firearm Owners' Protection Act, Pub L. No. 99-308, 100 Stat. 449 (May 19, 1986)..................................................................................3, 9

## INTRODUCTION

Gregory Roland Pruess is a military history aficionado. He comes from a military family, served in the army and once owned and operated a military museum in which he showcased his extensive collection of military memorabilia and weapons. JA 115-16. His criminal record is composed entirely of non-violent regulatory offenses involving the possession of weapons. SJA 107. Yet he faces a lifetime ban on possessing firearms and ammunition because of his status as a convicted felon.

The government cannot justify this curtailment of Pruess's Second Amendment right to bear arms. First, it relies on the Supreme Court's categorizing the ban on felons' possession of firearms as presumptively lawful, when this case involves not the possession of firearms, but the possession of ammunition. *See* U.S. Br. 13 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010)). The government also acknowledges that this Court's decision in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2011), provides the framework for analyzing Pruess's as-applied challenge to § 922(g)(1), the felon-dispossession statute. U.S. Br. 14-16. And it recognizes that, even with respect to the longstanding regulations that *were* identified in *Heller*, this Court has "suggest[ed] the possibility that one or more of these longstanding regulations [limiting firearm possession by felons and others] could be unconstitutional in the

face of an as-applied challenge." *Chester*, 628 F.3d at 679 (internal quotations omitted), U.S. Br. 18.

Pruess presents just such an as-applied challenge, which the government has failed to counter. First, it has failed to show that Pruess falls outside the protection of the Second Amendment, because it cannot overcome historical evidence establishing that non-violent felons were not prohibited from possessing firearms or ammunition until recently, approximately two centuries after the ratification of the Second Amendment. Moreover, the government fails to confront the fact that the *bullets* that Pruess bought can be purchased at any major ammunition retailer and can be used in a rifle, notwithstanding their packaging on an ammunition belt.

And second, the government fails to shoulder its burden of establishing that a reasonable fit exists between limiting ammunition possession by non-violent felons and Congress's objective of protecting the safety of citizens. This is because the government points to no empirical evidence that *non-violent* felons are as likely to recidivate as felons generally or that prohibiting the possession of ammunition without a firearm reasonably fits its objective. For these reasons, § 922(g)(1) is unconstitutional as applied to Pruess in this case.

# **ARGUMENT**

## I.    **The Government Fails to Recognize that the Supreme Court Has Not Identified the Ban on Felons' Possession of Ammunition As Presumptively Reasonable.**

The government assumes that, because *Heller* refers to the prohibition on felons' possession of firearms as "longstanding," *Heller* also establishes that the ban on felons' possession of ammunition is presumptively lawful. U.S. Br. 12-13. But that is incorrect. In *Heller*, the Court stated in *dicta* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626-27. As Pruess explained in his opening brief, because there is no longstanding prohibition on the possession of firearms by *non-violent* felons, the Court could not have meant for the firearms ban on non-violent felons to be presumed lawful. Op. Br. 24-27. That argument is even more compelling with respect to the ban on ammunition because, in addition to not being mentioned by the *Heller* Court at all, Congress did not ban any felon's possession of ammunition until 1986. Op. Br. 27 (citing Firearm Owners' Protection Act, PL 99-308, 100 Stat. 449 (May 19, 1986)).

And because the possession of ammunition without a firearm from which to discharge it is more benign than the possession of a firearm, the government must present more compelling evidence of a reasonable fit between the ban and the government's avowed interest in protecting the safety of its citizens, U.S. Br. 22,

than it would if this case involved possession of a firearm. Possessing ammunition without a firearm is precisely the conduct that Pruess engaged in here. In fact, Pruess had no intention of possessing a firearm to use the bullets himself; he intended to have other people use them on a rifle range to test his night-vision invention. SJA 83. Consequently, this Court's review of the government's burden of producing "sufficient *evidence*" of "a reasonable fit" between an important government objective and the challenged law under *Chester* must take into consideration that Pruess possessed only ammunition and that *Heller* does not establish the presumptive lawfulness of the ban on felons' possession of ammunition. *See Chester*, 628 F.3d at 683. Because the government's argument is directed entirely to the dangers associated with possession of firearms—not ammunition—it fails to present sufficient evidence of a reasonable fit between the ban on non-violent felons' possession of ammunition and the government's stated objective of protecting citizens' safety. *See* U.S. Br. 9, 22, 26, 32.

## II.    The Government Fails to Confront this Court's Precedents Interpreting the Second Amendment.

Even if the ban on felons' possession of ammunition were presumptively lawful, Pruess overcomes any presumptive reasonableness of § 922(g), as applied to him, because he is a non-violent felon who has been convicted only of "regulatory offenses," and the offense conduct to which he pleaded guilty involved only commonly-used ammunition. The government agrees that this Court set forth

4

the framework for reviewing Second Amendment challenges to gun-restriction laws in *Chester*, 628 F.3d at 680. U.S. Br. 14-15. But it misapprehends *Chester* and this Court's subsequent decision in *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), by arguing that *Moore* added an additional hurdle to the two-prong analysis set forth in *Chester*. U.S. Br. 16-17. The government claims that "before a court even gets to the two-part *Chester* analysis," it must consider whether the defendant falls within the category of individuals protected by the Second Amendment. U.S. Br. 16-17. But *Moore* never suggested that it was creating an additional hurdle. *Moore* merely restates the first part of the *Chester* analysis.

A.   **The Government Attempts to Revisit Whether Felons Were Excluded from Second-Amendment Rights When the Constitution Was Ratified, but *Stare Decisis* Prohibits Revisiting Evidence that *Chester* Already Ruled Inconclusive.**

The government engages in an extensive historical review of the Second Amendment, arguing that *Chester* is incorrect and that the historical evidence of the exclusion of felons from the right to bear arms is not inconclusive. U.S. Br. 26. But as the government admits, this Court in *Chester* determined that the historical data *is* inconclusive regarding whether felons generally—without even considering the question of non-violent felons—were excluded from Second Amendment protection. U.S. Br. 25-26; *Chester*, 628 F.3d at 680-81. Numerous legal scholars and commentators support this view. *Chester*, 628 F.3d at 680-81. Because this Court has already made a determination regarding the historical data, the

government's attempt to relitigate this issue is unavailing. *United States v. Rivers*, 595 F.3d 558, 564 n.3 (4th Cir. 2010) ("A panel of this Court cannot overrule, explicitly or implicitly, the precedent set by a prior panel.") (internal quotations omitted).

The government attempts to dismiss the Court's historical analysis by calling it dicta. U.S. Br. 25. However, that is incorrect. In *Chester*, the Court's determination that the historical evidence regarding felons' exclusion from firearm rights is inconclusive, and that it therefore must assume that the defendant fell within the protection of the Second Amendment, was essential to the holding of the case. When the Court makes a determination on which its holding rests, the pronouncement is not dicta. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996) (noting that when a court issues a decision "it is not only the result, but also those portions of the opinion necessary to the result by which [it is] bound").

**B.    Pruess Satisfied the First Prong of the *Chester* Analysis by Establishing He Falls Within the Protection of the Second Amendment.**

As this Court explained in *Chester*, the initial inquiry in an as-applied Second Amendment challenge such as the one that Pruess raises is "'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.'" 628 F.3d at 680 (quoting *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). The government argues that Pruess falls outside

the scope of Second Amendment protection for two reasons: first, he is a convicted felon and second, the ammunition he possessed was not the type typically used in defense of hearth and home. U.S. Br. 17-20. The Government is wrong.

> **1.    *The Government Fails to Overcome the Historical Evidence Establishing That Non-Violent Felons Were Protected by The Second Amendment at the Time of Its Ratification.***

The government argues at length "that dangerous persons have always been subject to limitations and prohibitions on their right to possess firearms." U.S. Br. 26. But even if that statement were generally true with respect to felons—and *Chester* holds that it is not—it is unpersuasive in Pruess's case because, as the district court found, he is a *non-violent* felon.

The government failed to present any evidence that Pruess, as a non-violent felon, is dangerous. As the district court found, and as the government conceded before the district court, SJA 16, all of Pruess's prior convictions were regulatory in nature, and none was for a violent crime. SJA 107. Moreover, his offense conduct in this case was completely non-violent; he intended to have other people use the ammunition he purchased to test a night-vision device he had invented and planned to market for military use. JA 670.

In an attempt to make Pruess's prior convictions seem more dangerous, the government highlights information included in the Presentence Investigation Report ("PSR") from Pruess's 1999 guilty plea, describing some of the weapons

7

involved in his prior convictions as stolen. U.S. Br. 5-6, 17. However, Pruess was never charged with or convicted of stealing or obtaining stolen property. JA 434k-434p. Moreover, the origin of the weapons does not make Pruess a more dangerous felon, particularly because there is no evidence that he was involved in stealing them, if they were indeed stolen. Furthermore, the government never argued before the district court that this evidence somehow transforms Pruess into a dangerous or violent felon. In fact, it conceded that Pruess's prior convictions were nonviolent. SJA 16. Accordingly, it is foreclosed from making that argument here. *United States v. Edwards*, 666 F.3d 877, 887 (4th Cir. 2011) (noting that issues raised for the first time on appeal generally will not be considered). Finally, the defendant's prior convictions and arrests, not relevant conduct, establish whether he is a violent felon. *See Chester*, 628 F.3d at 677 (looking to a prior indictment to determine the defendant's criminal convictions); *Moore*, 666 F.3d at 315 & n.1 (looking to the defendant's prior counts of conviction and arrest history to determine status as a violent felon).

Importantly, although the government cites historical data regarding the rights of "dangerous" persons to bear arms, it does not attempt to overcome—nor can it—the persuasive historical data regarding the very recent curtailment of non-violent felons' rights to bear arms. "Congress did not bar non-violent felons from possessing guns until 1961." *United States v. Barton*, 633 F.3d 168, 173 (3d Cir.

2011) (citing An Act To Strengthen The Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961)).

The government also fails to meaningfully address the fact that Congress did not impose a lifetime firearm and ammunition ban on *all* felons, regardless of the nature of their prior offenses, until 1992, when it began its annual refusal to fund review of applications by felons for firearm-ban relief. *United States v. Bean*, 537 U.S. 71, 74-75 (2002). Finally, the government fails to address the fact that Congress did not ban any felon's possession of *ammunition* until 1986. Firearm Owners' Protection Act, Pub L. No. 99-308, 100 Stat. 449 (1986). Accordingly, the historical evidence does not help the government in its attempt to cast Pruess as someone outside the scope of the Second Amendment's protection.

But even if the evidence regarding firearms prohibitions for non-violent felons were inconclusive—which it is not—Pruess would still satisfy the first prong of the *Chester* analysis. When the historical evidence regarding the Second Amendment's reach is inconclusive, this Court assumes that the defendant's Second Amendment rights are intact and proceeds to the second step of the *Chester* analysis. See *Chester*, 628 F.3d at 681-82 (concluding that because the evidence regarding felons' right to bear arms was inconclusive, then the right of misdemeanants to bear arms similarly must be ambiguous, and continuing to the next step of the analysis). In this Court's decisions following *Chester*, even when

the government has argued at length that the evidence establishes that the Second Amendment does not protect convicted felons, this Court has declined to so find. *See United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) (assuming that a convicted felon defendant was protected by the Second Amendment and proceeding to the second-step of *Chester*); *United States v. Staten*, 666 F.3d 154, 160-61 (4th Cir. 2011) (same); *United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) (same).

This Court's decision in *Moore* does not change the analysis. Moore had an "extensive and violent" criminal history, including multiple convictions for robbery and assault with a deadly weapon. 666 F.3d at 319-20. This Court placed "particular[]" emphasis on Moore's violent past in concluding that his possession of a firearm was "outside the scope of the Second Amendment." *Id.* at 320. But, as discussed above, Pruess is a very different type of defendant: he has no violent prior convictions, and he possessed only ammunition, not a firearm. Accordingly, Pruess has established that at least in his case, 18 U.S.C. § 922(g)(1), which bans felons from possessing both firearms and ammunition, "burdens conduct that was within the scope of the Second Amendment as historically understood." *Chester*, 628 F.3d at 680.

10

### 2. *The Type of Ammunition That Pruess Bought Does Not Take Him Outside the Protection of the Second Amendment.*

The government argues that Pruess is not protected by the Second Amendment because he pleaded guilty to buying belted ammunition, which is generally used for machine guns. U.S. Br. 19-20. The government does not dispute that the bullets themselves—which are commonly used in rifles—are the type that law-abiding citizens typically possess for lawful purposes. U.S. Br. 19. If Pruess had purchased the ammunition in a box, instead of on a belt, he could have done so at any major distributor of ammunition, including Wal-Mart. JA 559-60. The fact that the ammunition was belted—and therefore sold more cheaply than if it had been boxed—does not change the nature of the bullets themselves. Accordingly, the ammunition that the Pruess bought—as opposed to its packaging—is exactly the type of ammunition that law-abiding citizens posses for lawful purposes.

### 3. *Pruess's Intended Use of the Ammunition To Develop Night-Vision Goggle Mounts Does Not Take Him Outside the Protection of the Second Amendment.*

The government also argues that because Pruess did not purchase the ammunition in order to protect his home, the Second Amendment does not apply to him. U.S. Br. 19. This is incorrect. First, the wording of the Second Amendment does not limit its reach to self-defense in the home; it provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. Additionally, the Supreme Court has never stated that Second Amendment

11

protection is limited to self-defense; to the contrary, the Court noted, "*whatever else it leaves to future evaluation*, it surely elevates above all other interests the right of law-abiding responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Throughout *Heller*, the Supreme Court noted that at the time of its ratification, "most [Americans] undoubtedly thought [Second Amendment protection] even more important for self-defense *and hunting*" rather than preserving the militia. *Id*. at 599 (emphasis added); *see also id*. at 604, 606, 607. This Court has also recognized that *Heller* concluded that Second Amendment protection extended to "self defense and hunting" as well as militia services. *Carter*, 669 F.3d at 415. The fact that the Second Amendment has always recognized a right to bear arms for hunting purposes is important in this context. The ability to retain firearms to hunt was essential because it allowed citizens to support and feed themselves. *See Heller*, 554 U.S. at 615 (citing a joint Congressional report from 1866 noting that it was unconstitutional for freedmen in South Carolina to be stripped of their firearms which they needed, among other reasons, "to kill game for subsistence").

Similarly, Pruess bought the ammunition at issue in this case in order to help support himself. Although he did not plan to use the ammunition for self-defense or hunting, his intended purpose was to have others use the ammunition to test the night-goggle mounting device that he was creating for the United States military.

Pruess is a weapons expert and for much of his life supported himself with that knowledge, first in the Army and then as the proprietor and owner of a military museum. JA 115-16. Pruess's intended use of the ammunition—to help support himself by developing, creating, and selling a military component—is the type of activity originally protected by the Second Amendment because it was a means of supporting himself, similar to hunting. Moreover, the fact that Pruess intended to develop this invention—and in fact successfully did so—for military use, provides an additional and connected justification for this type of activity. His actions in developing this new technology for the military were aligned with the Second Amendment's goal to support a "well regulated militia." U.S. Const. Amend. II. By creating this technology, Pruess attempted to ensure the United States military remains an "effective fighting force." *Heller*, 554 U.S. at 596. Accordingly, Pruess retained the Second Amendment right to possess the ammunition that he bought.[1]

---

[1] The government also claims that because Pruess purchased the ammunition outside "the confines of his residence or its curtilage," the Second Amendment does not apply to him. U.S. Br. 19. But accepting this argument would eviscerate the Second Amendment. Everyone must purchase firearms and ammunition outside of his home. See 18 U.S.C. § 923(d) (requiring a business premises in order to receive a license for selling firearms). If the Second Amendment does not extend to citizens purchasing arms and ammunition in public places, it is difficult to imagine how any person could ever obtain firearms or ammunition.

**C.    The Government Fails To Discharge Its Burden of Establishing a Reasonable Fit Between 18 U.S.C. § 922(g)(1) As Applied To Pruess and a Substantial Government Objective.**

Because Pruess rebutted any presumption that his § 922(g)(1) conviction is lawful, the government bears the burden of demonstrating the constitutionality of the statute as applied to him. To discharge this burden, the government must present "tangible evidence" justifying an infringement of Pruess's Second Amendment rights. *Carter*, 669 F.3d at 418.

The government has not shown a reasonable fit between § 922(g)(1) and a substantial governmental objective as applied to Pruess. First, the government notes that numerous courts of appeals have declined to recognize an as-applied challenge to § 922(g)(1). U.S. Br. 21. However, none of those cases involved a defendant with a history of non-violent, regulatory offenses, like Pruess. *See United States v. Barton*, 633 F.3d 168, 170-75 (3d Cir. 2011) (defendant had prior felony drug convictions and a conviction for receiving stolen property); *United States v. Williams*, 616 F.3d 685, 691-94 (7th Cir. 2010) (defendant had prior conviction for felony robbery, a "violent crime," and his offense conduct involved selling drugs to a confidential informant); *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010) (defendant had numerous prior convictions for drug possession and delivery); *United States v. Vongxay*, 594 F.3d 1111, 1114-15 (9th Cir. 2010) (defendant had two prior car burglary convictions and a drug possession

14

conviction); *United States v. Khami*, 362 F. App'x 501, 507-08 (6th Cir. 2010) (defendant had prior drug convictions); *United States v. Stuckey*, 317 F. App'x 48, 50 (2d Cir. 2009) (defendant had three prior convictions for violent felonies); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir. 2009) (defendant had prior conviction for violent assault). Because those cases uniformly involved defendants with criminal histories that included violent crimes or drug convictions, their holdings do not provide guidance in this context.

The government notes that Congress has a strong interest in protecting the welfare of its citizens. U.S. Br. 22. It is certainly true that the government has a substantial interest in "protecting the community from crime by keeping guns out of the hands of dangerous persons." *Carter*, 669 F.3d at 417 (internal quotation omitted). But the government has failed to establish that Pruess is a dangerous person, and it has failed to show how banning Pruess's possession of ammunition without a firearm to discharge it advances its stated purpose. The only empirical evidence that the government presented regarding recidivism rates for convicted felons, both on appeal and before the district court, is a report from the Bureau of Justice regarding released inmates from 1994. U.S. Br. 24, SJA 41. As discussed in the Opening Brief, the government's reliance on one study of released inmates from 18 years ago that makes no distinction between violent and non-violent felons is insufficient to establish a "reasonable fit" between § 922(g)(1)'s ban on

15

ammunition possession by non-violent felons and the goal of protecting citizens. Op. Br. 15-16. The government has failed to present the "tangible evidence" required to justify an infringement of Pruess's Second Amendment rights. *Carter*, 669 F.3d at 418.

Because Pruess has raised an as-applied challenge to § 922(g), the government must present data that relates to Pruess's particular circumstances, namely that of a non-violent felon possessing only ammunition. *Id*. at 420 (remanding, in a case involving a defendant convicted of drug-related activity, so that the government had the opportunity to present data establishing the connection between drug abuse and violent crime). The government has failed to do so. According, the § 922(g)(1) ammunition ban violates the Second Amendment as applied to Pruess.

<u>**CONCLUSION**</u>

For the reasons stated above and in the opening brief, appellant Gregory Roland Pruess respectfully requests that this Court vacate his conviction.

DATED this 5th day of June, 2012.

Respectfully submitted,

Henderson Hill, Executive Director
Federal Defenders of
Western North Carolina, Inc.

/s/ Ann L. Hester
Ann L. Hester
Assistant Federal Defender
129 W. Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720

ATTORNEY FOR APPELLANT GREGORY ROLAND PRUESS

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*3,777*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>June 5, 2012</u>                    <u>/s/ Ann L. Hester          </u>
                                                    *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 5th day of June, 2012, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 5th day of June, 2012, I caused the required number of bound copies of the Reply Brief of Appellant to be hand-filed with the Clerk of the Court.

/s/ Ann L. Hester

*Counsel for Appellant*
